THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PABLO CABRERA, ) | 4:05CV3121 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| DR. JANSSEN WILLIAMS and ) | |
| CORRECTIONAL MEDICAL ) | |
| SERVICES, ) | |
| ) | |
| Defendants. ) | |

Plaintiff Pablo Cabrera claims he was denied appropriate medical treatment while incarcerated at the Tecumseh State Correctional Institution ("TSCI") by defendants Dr. Janssen Williams and Correctional Medical Services ("CMS"), the private company that contracted to provide medical services to inmates at TSCI.[1] Pursuant to 42 U.S.C. § 1983, Cabrera asserts that the alleged denial of proper medical treatment violated his Eighth Amendment rights and constitutes medical malpractice under Nebraska law. The defendants have filed a motion for summary judgment (filing 99) on both of Cabrera's claims. For the reasons set forth below, I shall grant the defendants' motion in part, deny it in part, and dismiss this case.

In support of their motion for summary judgment, Defendants have submitted a statement of material facts in accordance with the court's local rules, as well as evidence which is properly authenticated by affidavit. NECivR 56.1(a). Plaintiff has submitted a brief in response to the motion for summary judgment, but no additional evidence. Plaintiff's brief contains a statement of facts, but does not "address each

---

[1]Defendants Robert Houston, Harold Clarke, and Fred Britten were dismissed from this case with prejudice on May 30, 2006. (Filing 50.)

numbered paragraph in the movant's statement [of material facts]," as required by NECivR 56.1(b)(1). Accordingly, the "[p]roperly referenced material facts in the movant's statement [of material facts] will be deemed admitted" because such facts were not "controverted by the opposing party's response." NECivR 56.1(b)(1).

## I. STATEMENT OF UNDISPUTED FACTS

1. Pablo Cabrera is a prisoner confined at the TSCI, a facility within the Nebraska Department of Correctional Services. (Filing 1 ¶ 1; Filing 52 ¶ 1.)

2. Defendant Williams is a physician licensed to practice medicine in the State of Nebraska. He was previously employed by CMS, which is a private organization that contracted with the TSCI in Tecumseh, Johnson County, Nebraska, to provide medical services to inmates. (Filing 100-7, Aff. Williams ¶ 1.)

3. Beginning September 1, 2005, Correct Care Solutions ("CCS") took over the contract to provide medical care to inmates at TSCI. Most of the medical personnel remained the same. (*Id.*)

4. In his complaint, as amended, Cabrera claims that Williams and CMS violated his Eighth Amendment right to be free from cruel and unusual punishment in that they were deliberately indifferent in relation to two of his alleged medical needs: (a) bleeding in his rectal area; and (b) failure to remove a cyst located around the upper middle portion of his back and neck. Cabrera further claims medical malpractice on the part of Williams and CMS relative to the treatment he received for these same ailments. (Filings 1, 7, 42.)

5. According to Cabrera, these alleged infirmities began troubling him in March 2004. (Filing 1 ¶ 5; Filing 100-6, Dep. Cabrera, at 61:10-15.)

2

6.     Defendant Williams is very familiar with Cabrera's medical history and treatment for the alleged rectal issues and cyst on Cabrera's neck. With respect to the rectal issues, Williams recalls that Cabrera presented with two different problems. One was a large thrombosed hemorrhoid. The second was an infected cyst on his gluteus maximus. (Filing 100-7 ¶ 4.)

7.     According to Williams, and based upon his review of Cabrera's medical chart, Cabrera first brought his rectal condition to Williams' attention on March 14, 2003. At that time, Williams examined Cabrera and diagnosed him as suffering from hemorrhoids. Williams provided him with a prescription for antibiotic ointment. Cabrera did not report problems again for approximately one year. (*Id.* ¶ 5.)

8.     Then, on or about March 13, 2004, Williams testified that Cabrera presented to the TSCI emergency medical department complaining of severe pain while sitting. (*Id.* ¶ 6.) Cabrera was again provided with antibiotic ointment and was scheduled to be examined by Williams on March 15, 2004. (*Id.*) According to Williams, Cabrera again had hemorrhoids and had also developed a cyst on his gluteus maximus. Williams prescribed antibiotic ointment as well as antibiotics in case of infection. (*Id.*)

9.     Over the course of the next four or five months, Williams attempted to treat Cabrera's conditions on a number of occasions. Given the severity of his hemorrhoids and rectal cyst, proper treatment called for draining the cyst. Although Williams was able to provide this treatment to Cabrera on several occasions, Cabrera refused such treatment on each of the following dates: April 2, 2004; April 15, 2004; and May 9, 2004. (Filing 100-7 ¶ 7; Filing 100-6, at 62:15-63:22.) Cabrera also did not show up for a scheduled visit on April 29, 2004. (Filing 100-7 ¶ 7.)

10.    Because Cabrera refused to allow Williams to treat his conditions as scheduled, his rectal conditions got progressively worse. Williams therefore decided

3

to consult Dr. Keith W. Shuey at the Johnson County Medical Center for surgical revision and repair of his rectal hemorrhoids and cyst. (*Id.* ¶ 8.)

11.    Dr. Shuey examined Cabrera on August 26, 2004. (Filing 100-7 ¶ 9; Filing 100-3.) Based upon Dr. Shuey's examination, he diagnosed Cabrera as suffering from a perirectal fistulas abscess. Dr. Shuey determined that the abscess needed to be surgically excised.

12.    On or about September 10, 2004, Williams had a conversation with Dr. Shuey regarding the surgical excision of Cabrera's perirectal fistulas abscess. (Filing 100-7 ¶ 10.) Dr. Shuey indicated that he had done more research on Cabrera's condition and determined that he did not want to perform the surgery. Dr. Shuey suggested that Cabrera get a surgical consult from Dr. John S. Fallick. (Filing 100-7 ¶ 10; Filing 100-3.)

13.    Based upon Dr. Shuey's recommendation, Williams consulted Dr. Fallick. (Filing 100-7 ¶ 11.) Dr. Fallick examined Cabrera on October 21, 2004. (Filing 100-2.) At that time, Dr. Fallick incised and drained the perirectal abscess. Because there was little residual inflammation, Dr. Fallick decided that nothing further needed to be done and recommended continued sitz baths only as necessary.

14.    Dr. Fallick examined Cabrera again on January 27, 2005. (Filing 100-7 ¶ 12; Filing 100-2.) Based upon his examination, Dr. Fallick recommended examination under anesthesia and a possible fistulotomy if a fistula was present.

15.    On February 24, 2005, Dr. Fallick performed the following surgical procedures to repair Cabrera's perirectal abscess: (1) Excision right anal canal nodule; (2) Fistulotomy. (Filing 100-7 ¶ 13; Filing 100-2.) A follow-up examination by Dr. Fallick on March 10, 2005, revealed that Cabrera's condition had improved. Another follow-up examination was conducted by Dr. Fallick on July 14, 2005. At

that time, Dr. Fallick indicated that no other surgical therapy was necessary and recommended the use of TUCKS pads as needed.

16. At Cabrera's request, he was seen by another outside physician named Dr. Alan G. Thorson on April 23, 2007. (Filing 100-6, at 74:4-14; Filing 100-7 ¶ 14; Filing 100-4, at CM/ECF pp. 25-29.) Dr. Thorson examined Cabrera's rectal area for perianal suppurative disease and fistula. Dr. Thorson could not find any evidence of perianal suppurative disease or fistula and stated that there was no indication for surgical treatment of his condition. Dr. Thorson recommended the continued use of anal cream or ointment to address Cabrera's complaints of itching and discomfort. Williams received a copy of a letter from Dr. Thorson recounting the visit and his findings on or about June 11, 2007. (Filing 100-4, at CM/ECF pp. 25-29; Filing 100-7 ¶ 14.)

17. The cyst on Cabrera's neck was diagnosed by Dr. Fallick as a lipoma or superficial cyst during his visit on January 27, 2005. (Filing 100-2, at CM/ECF p. 5; Filing 100-7 ¶ 16.) Lipomas are commonly found in individuals of Cabrera's age, and treatment for non-cosmetic reasons is generally unnecessary. (Filing 100-7 ¶ 16.) Dr. Fallick did not recommend to Dr. Williams, or to any other physician, that Cabrera's lipoma needed to be removed. (Filing 109-2 ¶ 6.)

18. Williams examined Cabrera's lipoma on numerous occasions and indicated that non-cosmetic surgery was not necessary. (Filing 100-7 ¶ 16; Filing 100-6, at 80:3-23.)

## II. ANALYSIS

### A. Standard of Review

Summary judgment should be granted only "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Eighth Amendment Claim

Cabrera claims that the medical treatment he was provided for his rectal condition and the lipoma on his neck deprived him of his Eighth Amendment right to be free from cruel and unusual punishment. Cabrera specifically alleges that Dr. Williams and CMS were deliberately indifferent to his serious medical needs by failing to provide him with the appropriate level of care or treatment for his rectal condition by failing to timely correct it and by refusing to authorize surgical removal of the lipoma on Cabrera's neck. (Filing 1 ¶ 9.)

6

### 1. Defendant Williams

To sustain a claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The plaintiff must allege and show that he suffered objectively serious medical needs, and that officials actually knew of, but deliberately disregarded, those needs. *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007). "[S]ociety does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* (citing *Estelle*, 429 U.S. at 103-104). However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) ("Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs.").

A "serious" medical need must be either obvious to a layperson or supported by medical evidence, such as a physician's diagnosis. *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999). Further, the failure to diagnose and treat a medical condition "does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge. As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (quotations & citations omitted).

Assuming that Cabrera's rectal and cyst conditions were "serious," there is no evidence that Dr. Williams knew that these conditions created an "excessive risk" to Cabrera's health and failed to act on that knowledge. To the contrary, the evidence establishes that Dr. Williams and three outside private physicians repeatedly examined and treated Cabrera's rectal and cyst conditions since March 2004.

With regard to his rectal condition, Cabrera was examined by Dr. Williams as soon as he requested it. When Cabrera's rectal condition worsened due to Cabrera's refusal to let Dr. Williams treat his ailment as scheduled, Williams referred Cabrera to three separate physicians for examination and eventual surgery. None of the three subsequent consulting physicians indicated that Cabrera's health or treatment options had been compromised by the prior course of treatment or that the time period between diagnosis and treatment deviated from the normal course of medical care. (Filings 100-2, 100-3, 100-4.) Indeed, two of these physicians indicated that Cabrera's condition had improved after treatment or had become unapparent. (Filing 100-2 at CM/ECF p. 1; Filing 100-4 at CM/ECF p. 26.)

As to Cabrera's lipoma or cyst, he claims that because Dr. Williams failed to approve surgical removal of the cyst, he experiences "recurring bouts with headaches, dizziness, and numbness on the right side of his head." (Filing 1 ¶ 6.) However, Cabrera has failed to present evidence supporting his assertions that the cyst is responsible for his discomfort and that Dr. Williams acted contrary to the advice of Dr. Fallick who, Cabrera says, recommended surgery for the cyst. The defendants have filed an affidavit by Dr. Fallick stating that though the cyst "could have played some role in [Cabrera's] discomforts," it is not his "practice nor [his] custom to unequivocally recommend surgery in such an instance." (Filing 109-2 ¶ 6.) Dr. Fallick states, "At no time do I recall indicating to Dr. Williams or any other physician that Mr. Cabrera's lipoma needed to be removed," and "I did not do so in Mr. Cabrera's case." (*Id.*) Cabrera's "disagreement with a medical judgment" is not enough to sustain an Eighth Amendment claim. *Davis*, 992 F.2d at 153.

8

Even if Cabrera would have benefitted from additional or different medical treatment for his rectal and cyst conditions, a constitutional violation requires a showing that Dr. Williams rendered medical care "'so inappropriate as to evidence intentional maltreatment.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). That is clearly not the case here.

Therefore, Dr. Williams' alleged delay in treating Cabrera's rectal condition and his alleged refusal to authorize the surgical removal of Cabrera's cyst do not establish deliberate indifference to Cabrera's presumptively serious medical needs, and I must grant summary judgment in favor of defendant Williams on Cabrera's Eighth Amendment claim.

### 2. Defendant CMS

Although Cabrera has named CMS as a defendant, he is unable to specify or identify any actionable conduct on its behalf relative to the assertions in his complaint and is further unable to specify any particular reason for naming them in this suit. During Cabrera's deposition on March 25, 2008, he expressly indicated that he named CMS as a defendant "[b]ecause of the lack of medical treatment[,]" but he also indicated that he really did not know why CMS was a party and even indicated that he was unfamiliar with its role. Indeed, Cabrera admitted to suing CMS simply because "[t]hey're the people that are in charge of all the medicine" and that "this is where everything happened[.]" (Filing No. 100-6, at 86:3-87:21, 89:22-90:2.)

As this court previously stated (filing 50), CMS "may be liable for its own policies, customs, budgetary and other decisions, medical procedures and staffing practices if any of those posed a substantial risk of serious harm to inmates in the plaintiff's position." (Filing 50, at CM/ECF p. 4.) However, other than simply asserting in his brief that "CMS' policy, custom, or practice consists of Williams

9

being the sole person to approve or disapprove any serious treatment that Cabrera may need" (filing 107, at CM/ECF p. 11), Cabrera has not presented any evidence establishing that Dr. Williams was the delegated policy-making authority regarding medical decisions at TSCI or that a "custom" existed by virtue of Dr. Williams regularly acting without supervision or review. In fact, Cabrera has indicated that "Dr. Kohl" was the general doctor who "ha[d] to authorize it in order for [Williams] to do anything." (Filing 100-6, at 34:19-35:2.) According to Cabrera, he was informed that Dr. Kohl is "the one that decides if anything happens here." (*Id.* at 88:20-89:8.) There is no evidence that Dr. Kohl is or was associated with defendant CMS.

In the absence of a "policy, practice, or custom" claim, Cabrera's suit against CMS is necessarily based upon respondeat superior for decisions made by its medical staff. "It is well settled that [r]espondeat superior is not a basis for liability under 42 U.S.C. § 1983." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (internal quotation marks & citation omitted). Therefore, summary judgment must be granted in favor of defendant CMS on Cabrera's Eighth Amendment claim.

### C. Medical Malpractice Claim Under State Law

When a district court dismisses federal claims over which it has original jurisdiction, the balance of interests usually "will point toward declining to exercise jurisdiction over the remaining state law claims." *In re Canadian Import Antitrust Litigation*, 470 F.3d 785, 792 (8th Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). *See also Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) ("Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed . . . ."). Indeed, the Court of Appeals has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible." *Gregoire v. Class*, 236 F.3d 413, 420 (8th Cir. 2000) (quoting *Condor Corp. v. City of St. Paul*, 912 F.2d

215, 220 (8th Cir.1990)). "[W]hen state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law . . . ." *Id.* at 420-21 (quoting *ACLU v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir. 1999)).

Therefore, I shall dismiss Cabrera's state-law medical malpractice claim without prejudice. *See Labickas v. Arkansas State Univ.*, 78 F.3d 333, 334-35 (8th Cir. 1996) (per curiam) (while district court had discretion to dismiss state-law claims, such claims should have been dismissed without prejudice).

Accordingly,

IT IS ORDERED that the motion for summary judgment (filing 99) filed by defendants Dr. Janssen Williams and Correctional Medical Services is granted in part and denied in part, as follows:

> 1. The motion is granted with respect to the plaintiff's Eighth Amendment claim, and such claim is dismissed with prejudice;
>
> 2. The motion is denied with respect to the plaintiff's state-law medical malpractice claim pursuant to 28 U.S.C. § 1367(c)(3), and such claim is dismissed without prejudice;
>
> 3. Pursuant to the court's prior order (filing 50), defendants Robert Houston, Harold Clarke, and Fred Britten are dismissed from this case with prejudice;
>
> 4. Judgment shall be entered by separate document.

August 21, 2008.

                BY THE COURT:
                s/ *Richard G. Kopf*
                United States District Judge